IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 15-604** |
| **GARRET STRATHEARN** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

While Finance Director for the City of Allentown, at former Mayor Edwin Pawlowski's behest, the defendant circumvented the fair and impartial city contracting process to ensure that Mayor Pawlowski's preferred vendor, Northeast Revenue, be awarded a city legal services contract. The government asks the Court to consider all of the factors set forth below in fashioning an appropriate sentence.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006)).  See also *United States v. Smalley*, 2008 WL 540253, *2 (3d Cir. Feb. 29, 2008) (stating that the *Gunter* directive is consistent with later Supreme Court decisions).   In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision.   *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc).   The failure to properly calculate the advisory guideline range will rarely be harmless error.  *United States v. Langford*, 2008 WL 466158, *8-11 (3d Cir. Feb. 22, 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.   "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it."   *Cooper*, 437 F.3d at 329.   See also *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

**I.     BACKGROUND**

The defendant was the Finance Director for the City of Allentown during the relevant time period. Presentence Report ("PSR") ¶ 14. As of 2013, the city contract to collect delinquent real estate taxes had been held by Portnoff Law Associates for many years. *Id.* In late 2013, the city decided to utilize a bidding process to select the law firm for this contract. PSR at ¶ 15. An evaluation committee was formed comprised of city employees, and a Request for Proposals or "RFP" was issued by the City, seeking bids on the contract. PSR at ¶ 16. Portnoff, Linebarger Goggan, and Northeast Revenue all submitted proposals. PSR ¶ 17. While the bids were pending, Mayor Pawlowski solicited a campaign contribution from Northeast, as well as tickets to a Philadelphia Eagles playoff game, which formed the basis for his conviction on Counts 4 and 5. Ultimately, the committee ranked Linebarger as the top candidate. PSR ¶ 18.

In early January 2014, the defendant returned to work following an extended sick leave and, at Pawlowski's request, inserted himself into the committee evaluation process. PSR ¶ 23. This was because Northeast Revenue was "important to the Mayor." *Id.* The defendant caused a round of interviews to occur and misled the committee about the references of Linebarger, and ultimately made clear to committee member and Assistant City Solicitor Dale Wiles that the contract had to go to Northeast Revenue. As a result, Dale Wiles falsified the committee's score sheets to rank Northeast Revenue first. PSR ¶¶ 24, 26, 28. The award and rejection letters and RFP solicitation emails that related to this contract formed the basis for Pawlowski's mail fraud and wire fraud convictions on Counts 20, 21, 22, 29 and 30. PSR ¶ 25.

In 2014 and again in 2015, the defendant made two separate false statements to the FBI, denying that Pawlowski expressed any preference for who should get the contract, and did the same in the grand jury in September 2015.   After being advised that he was now a target of the grand jury investigation, and obtaining counsel, the defendant pled guilty on January 11, 2016, to conspiracy to commit wire and mail fraud.   In May 2016, the defendant finally provided accurate testimony in the grand jury.   He testified at Pawlowski's trial in January 2018, at the conclusion of which Pawlowski was convicted on numerous counts related to the Northeast Revenue contract, as indicated above.

## II.     SENTENCING CALCULATION

### A.     Statutory Maximum and Minimum Sentence.

Count One carries a maximum of 20 years' incarceration, a period of supervised release of five years, a $250,000 fine, and a $100 special assessment.

### B.     Sentencing Guidelines Calculation.

The parties stipulated in the Plea Agreement to the applicability of the following Sentencing Guidelines:

| | |
|---|---|
| Base offense level, 2X1.1, 2B1.1(a)(1) | 7 |
| Loss of more than $40,000 but less than $95,000, 2B1.1(b)(1)(D) | +6 |
| Adjustment for role in offense, 3B1.2(b) (minor participant) | -2 |
| Adjustment for role in offense, 3B1.3 (position of public trust) | +2 |
| Obstruction, 3C1.1 | +2 |
| Adjusted offense level | 15 |

The parties also stipulated that the defendant would be eligible for at least 2 points, and depending on the total offense level, the third point, for acceptance of responsibility, pursuant to 3E1.1.

The Probation Office calculated the Sentencing Guidelines in the same manner, resulting in an adjusted offense level of 15. Subtracting 2 points for acceptance of responsibility, the Probation Office arrived at a total offense level of 13, and a Guidelines range, in light of a Criminal History Category of I, of 12 to 18 months' incarceration.

### III. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that this Court should consider the calculation of the advisory guidelines as set forth in the Presentence Investigation Report, the plea agreement, review all other factors, and impose an appropriate sentence.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). As will be discussed later, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public

from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).

The nature of this offense is serious.   The defendant, who was in a position of public trust as the City of Allentown Finance Director, had a responsibility to ensure that the contracting process was conducted in a fair and impartial manner, among other reasons, to ensure that the City got the best value for its money.   Instead, he circumvented this process at the behest of the Mayor to award the contract to the Mayor's preferred vendor, Northeast Revenue. Selling contracts to a public official's most promising campaign contributor is exactly the type of nefarious conduct that the City's contracting process was designed to avoid.

At the same time, the defendant participated in only one of the many bribery schemes the Mayor engaged in, did so for a discrete period of time, *i.e.*, a matter of weeks, and did so at the direction of his direct supervisor and with the expectation that he would be fired if he did not comply.   His culpability relative to other members of the conspiracy, and certainly relative to Mayor Pawlowski, is substantially less.

The Court must also consider the nature of the offender.   The defendant is 71 years old and has no criminal history.   He attended Valley Forge Military Academy, obtained a degree in political science from Gettysburg College, joined the United States Army in 1968, and was sent to Vietnam.   PSR ¶¶ 56-57; 75-77.   Following the Army, the defendant obtained his graduate

degree from Penn State University, married and had a daughter, and later divorced.  PSR ¶¶ 58, 78.  The defendant has three grandchildren whom he cares for regularly.  PSR ¶ 59. He also served for several years in the New Jersey National Guard.  PSR ¶ 79.  In 1997, the defendant married his second wife, and the marriage ended after a year.  PSR ¶ 60.

The defendant's 28-year career has primarily been in the field of public finance, including at several major investment firms. PSR ¶ 85.  He started working for the City of Allentown in July 2010 and remained there until May 2015.  PSR ¶¶ 61, 84-85.

The defendant currently lives alone in a two-bedroom apartment above a dental office in New Jersey.  *Id.*  The defendant has some health issues, including hypertension, high cholesterol, a significant history of heart disease, including an aortic valve replacement, and a torn meniscus in his left knee.  PSR ¶¶ 65-66.  The defendant was also diagnosed with Post-Traumatic Stress Disorder following his military service in Vietnam, during which he witnessed the brutal slaying of a 20-year-old fellow soldier.  PSR ¶¶ 70-71.  He receives weekly psychological counseling in relation to this.  *Id.*  The defendant has a prior history of alcohol abuse, but achieved sobriety in 1979, which he has maintained for 37 years.  PSR ¶¶ 73-74.

The Court should impose a sentence that will protect the public from further crimes of the defendant.  Given that the defendant is now retired and no longer working in the field of public finance or government administration, this is of minimal concern.  The defendant's conduct in the instant offense appears to be an aberration.

Additionally, the Court should fashion a sentence that will provide adequate punishment, "reflect the seriousness of the offense and promote respect for the law."  18 U.S.C. § 3553(a)(2).  The recommended sentence also should afford adequate deterrence to others who would commit

7

a similar offense, and lead to consistency in sentencing.   *Id.* Clearly, crimes such as the one in which this defendant engaged deeply impact the public's trust in its government, and must be deterred.

## V.     **CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court fashion an appropriate sentence, taking into account the Guidelines calculation by the Probation Office, the calculation set forth in the plea agreement, and other factors.

                                       Respectfully submitted,

                                       JENNIFER ARBITTIER WILLIAMS
                                       First Assistant United States Attorney


                                         */s/Michelle L. Morgan*
                                       MICHELLE L. MORGAN
                                       ANTHONY J. WZOREK
                                       Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that on this day I caused a copy of the Government's Sentencing Memorandum to be served by electronic filing, and/or first-class mail, addressed to:

Maranna Meehan, Esq.
Federal Community Defenders
The Curtis Center, Suite 540 West
601 Walnut Street
Philadelphia, PA 19106

*/s/ Michelle L. Morgan*
MICHELLE L. MORGAN
Assistant United States Attorney

Dated: November 21, 2018